GOFFINET ET AL., PLAINTIFFS AND APPELLANTS, *v.* SÁNCHEZ ET AL., DEFENDANTS AND APPELLEES.

Appeal from the District Court of Humacao in Injunction Proceedings.

No. 1512.—Decided January 30, 1917.

INJUNCTION—CONTRACT—AGRICULTURAL FINANCING—GRINDING CANE.—From the wording of sections 10 and 19 of the Act to provide for contracts of advances for agricultural purposes and grinding of cane, approved March 10, 1910, as amended in 1911, it does not appear that it was the intention of the Legislature that the remedy by injunction to enforce specific performance of a *contract for grinding cane* should have the effect of benefiting a subsequent creditor who had entered into another entirely independent *contract* with the same debtor for the purpose of *agricultural financing* secured by the crop in an action brought by the said subsequent creditor, to which the other creditor under the grinding contract was not made a party.

ID.—ID.—ID.—DEMURRER.—In the present case it was held that the petition for an injunction was demurrable for lack of cause of action and that the demurrer should have been sustained inasmuch as the *contract for agricultural financing* was not incorporated in a *contract for grinding cane,* and neither

of the contracts referred to in the complaint is a *part of the other;* and the plaintiffs were not parties to the grinding contract nor parties to the action brought by the Central Santa Juana.

The facts are stated in the opinion.

*Mr. Herminio Díaz Navarro* for the appellants.

*Messrs. Arturo Aponte, Jr.,* and *Carlos Travecier* for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Petitioners, appellants, filed in the District Court of Humacao the following complaint:

"Barons Augusto and Constantino Goffinet, the complainants in the above-entitled cause, appear by their attorney, Herminio Díaz, and complain of Francisco Sánchez Rodríguez and his wife, Mercedes Pagán, alleging the following facts:

"*First.*—That in a private ˙document executed in the city of San Juan on November 9, 1912, between the complainants and defendants and signed before notary Herminio Díaz Navarro, which is attached hereto as a part of this complaint as if included therein, the parties set out the following:

"1. That Francisco Sánchez Rodríguez and his wife were in the possession and use of the eight properties described in the said contract:

"2. That upon the dissolution of the firm of Aponte, Sánchez & Co., the said Sánchez assumed the obligation incurred by virtue of a contract executed between the S: A. des Sucreries de Saint Jean and the aforesaid firm, relative to the planting and grinding of one hundred and fifty acres of sugar cane for the crops of the years 1912, 1913 and 1914, on lands leased by said firm from Carolina Cajas, widow of Valdés, consisting of 317 acres, situated in the ward of Quebradas, of the Municipal District of San Lorenzo, the said Sánchez and his wife also binding themselves by another contract to prepare, plant and cultivate in cane for the crop of 1912, fifty acres, and for the crops of 1913 and 1914, one hundred acres; the said two contracts having been rescinded by mutual agreement of the S. A. des Sucreries de Saint Jean and said Sánchez and his wife on November 9, 1912.

"3. That in order to comply with said contract, plaintiffs agreed with the defendants that the former should give a credit to the latter, which they did, the defendants admitting that they were indebted to the plaintiffs up to October 18, 1912, in the sum of ten thousand

·dollars, with interest at the rate of 10 per cent per annum, and both parties agreed that the contract by virtue of which the said credit was opened had been inoperative since the 9th of November, 1912, and that the said ten thousand dollars should be charged to the new credit, which, according to this new contract, as hereinafter provided, shall be opened.

"4. That by another contract signed on the same date as the present contract, Sánchez and his wife became bound with respect to the properties described in this new contract, in the following manner: (*a*) to deliver to the S. A. des Sucreries de Saint Jean for grinding during the crop of 1913, and at Central Santa Juana, situated in the city of Caguas, all sugar cane growing on November 9, 1912, and owned by Sánchez and his wife as successors of Aponte, Sánchez & Co., and in their own right; (*b*) to prepare, plant and cultivate in sugar cane, at their own expense, from six to eight hundred acres for the crop of 1914, and from eight hundred to one thousand acres for each of the crops of 1915 to 1918, inclusive, being at liberty to plant the above number of acres on the properties they may deem convenient of those described in the enclosed contract; (*c*) to deliver to the S. A. des Sucreries de Saint Jean for grinding at the Central Santa Juana during each of the said crops of the years 1914 to 1918, inclusive, all sugar cane that said Sánchez and his wife might obtain by virtue of the obligation incurred as provided in paragraph B, next preceding.

"5. That in order to attend to the management, maintenance, cultivation and improvement of the cane which Sánchez and his wife were to plant on the said properties, the plaintiffs agreed with the defendants to grant to the latter an agricultural loan by virtue of which the defendants were to receive, upon the signing of this contract, from the Barons Goffinet, the sum of five thousand dollars, for which sum the defendant then gave a receipt; and the defendants should receive, further, to be charged to said credit, and from the plaintiffs, up to the sum of seventy dollars per acre of sugar cane of the first growth, and forty dollars per acre of second growth, giving the proper receipts; it being understood that the said sum shall be delivered to the defendants whenever, in the opinion of the agent of Barons Goffinet, Sánchez and his wife had properly cultivated the said lands, and always in proportion to the work performed.

"6. Sánchez and his wife agreed to refund to plaintiffs Goffinet or whoever might represent them, at the end of each crop, what-

ever sum they should owe them for principal and interest at the rate of 10 per cent per annum by virtue of the sums received on account of the said agricultural loan.

"7. As security for the payment to be made on said date to Messrs. Goffinet, or whoever represented them, of any sum due on said date for principal and interest, Sánchez and his wife, in the manner and with the preferences prescribed by the law regarding agricultural contracts of March 10, 1910, as amended on March 9, 1911, pledged all sugar cane that might be obtained and the sugar produced therefrom on the said properties as provided in the aforesaid contract for the planting and grinding of cane as finally executed between Sánchez and his wife and the S. A. des Sucreries de Saint Jean.

"8. It was understood and stipulated that inasmuch as the lawful representative and attorney in fact in this Island of the Sucreries de Saint Jean was the person who in the name of the complainants executed this contract of agricultural loan, the said corporation was notified of the same for the purposes of the provisions of section 11 of the said law for agricultural loans and grinding of cane.

"*Second.*—The foregoing contract was presented in the Registry of Agricultural Contracts on January 15, 1914, and recorded on February 5, 1914, as to the eight properties to which it refers, on folios 29, 33, 36, 42, 45, 48 and 51, volume first, of San Lorenzo, properties numbers 7, 8, 9, 10, 11, 12, 13 and 14, registrations first, respectively.

"*Third.*—Pursuant to said contract plaintiffs gave to defendants for the crop of 1914 the advances stipulated. On September 1, 1914, and by deed executed in Caguas before notary Lorenzo Jiménez, defendants confessed to be indebted to the plaintiffs, according to a liquidation made, in the sum of ten thousand dollars; and that being unable to pay the said sum, they promised to pay the same by instalments on the 30th of June of the years 1915, 1916 and 1917, and at the time of the crops corresponding to said years as agreed in the aforesaid contract of agricultural loan; that is to say, that after refunding with the sugar the total sum of the advances received for each crop, the remainder of the sum obtained from said sugar should be applied to the payment of the said ten thousand dollars. Defendants gave in pledge to plaintiffs as a guaranty for the performance of said agreement, the one hundred and sixty oxen, four horses, twenty carts and two hoisting machines referred to in the deed, which were and are the property of said defendants, the plaintiffs remaining in possession of said properties as agreed in the deed.

"*Fourth.*—The defendants having thus postponed the payment to plaintiffs of the ten thousand dollars which defendants promised to pay to the plaintiffs for advances after the crop of 1914, the plaintiffs during the crop of 1915 continued, according to said contract of agricultural loan, giving Sánchez what he needed for the cultivation of his cane planted for the crop of said year 1915, and this crop of 1915 having terminated, and the account of the defendants having been liquidated, the latter not only did not pay the total sum for the advances given them by plaintiffs, but they became indebted to said plaintiffs in the sum of four thousand and sixty-six dollars and thirty-four cents, and also the third part of the ten thousand dollars referred to in the foregoing paragraph.

"*Fifth.*—Therefore, on the 30th of June last, defendants were already owing to plaintiffs by virtue of the expiration of the term the sum of $7,499.67¼, with liquidated interest, as already stated, the said debt remaining entirely unpaid.

"*Sixth.*—In spite of the fact that plaintiffs faithfully complied with the said contract by delivering to Sánchez the advances for the year 1916, and notwithstanding the fact that Sánchez had stated in his said contract for agricultural loan (paragraph 3rd) that his lease of the lands belonging to Soto Hernández and Tous Soto, which according to its face was to expire on July 17, 1915, the fact is that during the term of said contract of agricultural loan, and the said lease having terminated on July 17, 1915, Sánchez abandoned the cultivation and care of the cane by him planted in such a way that the cane is entirely neglected, and if things were to continue as they go now the cane would be completely lost as it is almost now; and it should be noted that according to the statements made by Sánchez himself, he was growing on the properties of Messrs. Valdés fifty acres of sugar cane of first growth, one hundred and fifty acres of spring cane, and sixty acres of second year's growth, making in all two hundred and eighty acres, more or less.

"*Seventh.*—That in view of the above statement of facts nothing else is required to show: (*a*) that it is entirely necessary and convenient that Sánchez give up his attitude as to the contract in question inasmuch as it would cause this party irreparable and inestimable damages *de jure,* the matter in question being a contract for agricultural loan; (*b*) in order to avoid such irreparable damages and a multiplicity of suits the complainants have no more speedy and effective remedy than an injunction, which is the remedy provided by the law for agricultural contracts.

"Wherefore, we pray the court to render judgment declaring that defendants were and are under obligation, by virtue of the aforesaid contracts, and in compliance therewith, to properly cultivate and not to abandon the sugar cane referred to therein up to the time of the crop and grinding, and if not done so the S. A. des Sucreries de Saint Jean should substitute them under the supervision of the defendants; and that when the proper bond has been furnished, the court issue a writ of injunction against said defendants commanding them, as well as those acting in their name, to refrain from taking any steps that may prevent the owners of Central Santa Juana, namely, the S. A. des Sucreries de Saint Jean, where the cane in question is to be ground, that they properly cultivate them and then proceed to grind the said cane under the supervision of the defendants, the said defendants being therefore enjoined; and to decree that the said injunction finally remain in force as if permanent, with costs."

The district court sustained a demurrer on the ground that the facts alleged do not constitute a cause of action and dismissed the petition.

Sections 1 and 5 of an act entitled "An Act to Provide for Contracts of Advances for Agricultural Purposes and Grinding of Cane, and for other purposes," approved March 10, 1910, in so far as pertinent, read as follows:

"Section 1.—A contract of advances for agricultural purposes is one under which one of the parties thereto turns over and the other party receives, subject to reimbursement, a certain amount of money in cash or specie, whether in a lump sum or in successive instalments, with which to meet the expenses of administration, maintenance, cultivation or improvements of rural properties, the products of said properties being answerable and liable for the repayments of the amounts so received, with interest agreed to thereon.

&ast;          &ast;          &ast;          &ast;          &ast;          &ast;          &ast;

"Section 5.—That for the purposes of this Act, contracts for the grinding of cane shall be such as are entered into by and between sugar factories or mills and the so-called '*colonos*,' owners, possessors, lessees or sub-lessees of properties devoted in whole or in part to the cultivation of cane, for the sale or grinding of cane and for the manufacture and sale of sugar.

&ast;          &ast;          &ast;          &ast;          &ast;          &ast;          &ast;

"Where a contract for the grinding of cane comprises advances for agricultural. purposes, the provisions of this Act for such contracts of advances shall govern such advances, and the factory may deduct to the *colono* from the value or proceeds of cane delivered and ground as provided in the contract, such sum or sums as shall have been supplied to the said *colono* by way of advances."

Sections 10 and 19 of the same law, as amended in 1911, provide (italics ours):

"Section 10.—That *in contracts for the grinding of cane,* should the mill be disposed of, *the contract for grinding* shall be respected and performed by the new owner thereof, and any *contract for the grinding of cane* filed pursuant to this Act may be specifically enforced by order or judgment of any district court of Porto Rico or of any other court of competent jurisdiction, against any *party to such contract,* and *against any person,* firm or corporation *to whom* or which *may be transferred the ownership, possession or control of the mill* or factory in which such canes are to be ground *or of the canes* to be so ground, *or the lands* upon which such canes are growing or are to be grown,. *or any interest therein,* even though such contracts may not be enforceable against any other party. Any such order or judgment may forbid the use of such mill or the sale or disposition of any such canes in a manner inconsistent with such contract, and may require *any such party* or transferee to perform the obligation of such contract fully and completely, or to such extent as the court may deem proper, even though it may not be practicable to enforce complete performance or give full relief; and for the purpose of granting the remedy of specific performance the breach of any such contract by *any such party* or transferee shall be presumed to cause irreparable damage to the other party thereto. Disobedience of any such order or judgment shall be considered a contempt of court and shall be punishable as such.

"Section 19.—That in case of breach of *a contract for the grinding of cane* or for the delivery of the same, the *party* injured by such breach, may compel the specific performance by means of an injunction, of the contract, in so far as it refers to the crop standing and growing upon the land at the time of the breach; it being understood that the remedy of specific performance or of injunction shall not be granted in reference to crops not then growing as to which the *party* injured by the breach is left to his action at law for damages."

The whole argument of appellants is contained in three short paragraphs which we quote *verbatim* from the brief:

"There is no doubt that, according to those statutory provisions, when a contract for advances for agricultural financing is included in a contract for grinding sugar cane, or when the one contract is a part of the other, the party injured by the breach of either of them may enforce the performance of the contract for grinding by means of an injunction. In such a case the general provisions of our Injunction Act are not applicable, but recourse must be had to the special provisions of the Act governing agricultural loans which prescribes, in the final part of section 10, that for the purposes of an injunction the non-performance of such contract by any of the parties shall be considered as irreparable damage.

"Moreover, even referring to the general law of injunctions, High on Injunctions, page 14, says that although it may be necessary to show substantial and real damages to a court of equity before it will grant an injunction, acts which, though irregular and unauthorized, may not result in damages do not constitute a ground for the remedy.

"But when the repetition or continuation of the act in question may become the basis of adverse rights, equity will intervene by injunction although neither rights nor real and substantial damages may be shown."

But in the case at bar the contract for agricultural advances is not *"contained in a contract for the grinding of cane,"* nor is either of the contracts mentioned in the complaint *"a part of the other,"* nor are plaintiffs herein parties to the grinding contract, nor is the Central St. Jean a party to this suit. While we agree with the petitioners, appellants, that "substantial and positive injury must always be made to appear to the satisfaction of a court of equity before it will grant an injunction, and acts which, though irregular and unauthorized, can have no serious result, constitute no ground for the relief (High on Injunctions, 3d. ed., p. 9, § 9), we wholly fail to perceive in the instant case, and appellants do not undertake to point out, how "the repetition or continuation of the act involved can become the basis of adverse rights."

We think it too clear for argument that the complaint makes out no case for the granting of an injunction under the ordinary rules governing such matters; and it is difficult indeed to discern in the language of sections 10 and 19, *supra,* any legislative intention that the rather drastic remedy provided for the specific enforcement of "contracts for the grinding of cane" should inure to the benefit of subsequent creditors who may see fit to enter into entirely independent "contracts of advances for agricultural purposes" with the same debtor and relying upon the same crop as security for the money advanced, in a suit brought by such junior creditors to which the creditor under the contract for grinding is not a party.

The judgment appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.